UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARIA JONAS, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. H-10-2437 |
| § | |
| OCWEN FINANCIAL CORPORATION; § | |
| d/b/a OCWEN LOAN SERVICING LLC, § | |
| *et al.*, § | |
| § | |
| Defendants. § | |

# MEMORANDUM OPINION AND ORDER

### I.   Introduction

Pending before the Court is the defendants', Ocwen Loan Servicing, LLC[1] and U.S. Bank N.A., as Trustee for the Registered Holders of Bancca Assets Securitization Issuance Corporation, Mortgage Loan Asset Backed Certificates Series, 2006-1, motion for summary judgment (Docket Entry No. 16) and reply in support (Docket Entry No. 17). The plaintiff, Maria Jonas, did not file a response, and the deadline for doing so has now elapsed.[2] After having carefully reviewed the motion, the reply, the record and the applicable law, the Court grants the defendants' motion.

### II.   Factual Background

This case involves a dispute over a loan secured by the plaintiff's primary residence. Before the defendants foreclosed on the contested real property on October 6, 2009, the plaintiff owned the property, secured by a mortgage that was held by U.S. Bank and serviced by Ocwen. On September 28, 2005, the plaintiff completed a residential loan application, wherein she stated

---

[1] Ocwen Loan Servicing, LLC ("Ocwen") asserts that the plaintiff wrongly identified it as Ocwen Financial Corporation d/b/a Ocwen Servicing, LLC.

[2] *See* S.D. Tex. L.R. 7.3.

that her monthly income was five thousand dollars per month, and that she had been residing for eight years at 12250 S. Kirkwood #1622, in Stafford, Texas. On October 21, 2005, the plaintiff signed an adjustable rate note for a loan exceeding fifty thousand dollars from Encore Credit Corporation d/b/a ECC Credit Corporation of Texas ("ECC"), encumbering a property located at 2803 Camelot Lane, Missouri City, Texas 77549.[3] She also signed a deed of trust, using the property to secure the note. The deed is recorded in the Mortgage Records of Fort Bend County, Texas. The plaintiff also signed an affidavit certifying that she had reviewed the contents of her loan documents, that she was still being paid five thousand dollars per month, and that she read and fully understood the penalties for false statements made on her application. ECC subsequently assigned its interest to U.S. Bank.

On April 17, 2009, Ocwen sent the plaintiff a notice of default and intent to accelerate via certified mail. The plaintiff sent Ocwen an application to modify her loan under the federal Home Affordable Modification Program ("HAMP"), but she was told that her monthly income was not high enough to qualify for the program. On July 31, 2009, the defendants sent the plaintiff a notice of acceleration and notice of trustee's sale via certified mail. The latter notice informed her that the foreclosure sale was scheduled for September 1, 2009. On August 24, 2009, Ocwen received more information from the plaintiff regarding her HAMP application, and

---

[3] More particularly, the property is:
> UNIT NO. SEVEN (7), IN BUILDING LOCATION NO. EIGHT (8), OF THE REPLAT OF QUAIL VALLEY TOWN HOMES, SECTION THREE (3), A SUBDIVISION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 12, PAGE 9, OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS, TOGETHER WITH THE RIGHTS IN AND TO THE COMMON AREA OF QUAIL VALLEY TOWN HOMES SECTION THREE (3), AS SET OUT IN THE CONDITION AND DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS OF QUAIL VALLEY TOWN HOMES, DATED JANUARY 26, 1973, RECORDED IN VOLUME 583, PAGE 293 OF THE DEED RECORDS AND ANNEXED AND ADOPTED BY QUAIL VALLEY TOWN HOMES, SECTION THREE (3), BY INSTRUMENT DATED AUGUST 6, 1973, RECORDED IN VOLUME 596, PAGE 479, OF THE DEED RECORDS OF FORT BEND COUNTY, TEXAS, REFERENCE TO WHICH IS HERE MADE FOR ALL PURPOSES.

thus postponed the foreclosure sale. On September 10, 2009, the defendants sent the plaintiff a notice of reposting and sale, scheduled for October 6, 2009.

On September 14, 2009, the notice of sale was posted at the courthouse and filed for record. On October 6, 2009, Ocwen foreclosed on the property, and U.S. Bank bought the property for $80,910.00.[4] On October 14, 2009, U.S. Bank informed the plaintiff that her home had been sold and instructed her to vacate within three days. The plaintiff responded that she had an agreement with Ocwen, whereby her loan was to be modified and was currently in modification status. U.S. Bank filed its foreclosure sale deed in the Fort Bend County Real Property Records on October 20, 2009.

On June 1, 2010, the plaintiff filed suit in state court, and the defendants timely removed the case to this Court, which has jurisdiction pursuant to 28 U.S.C. § 1332. During the plaintiff's deposition on April 21, 2011, she stated under oath that she misrepresented that she earned five thousand dollars per month on her loan application, when she in fact earned two thousand dollars per month. She also misrepresented that she had lived at the Stafford, Texas residence for eight years, when in fact she had resided there for less than one year.

### III.    Contentions of the Parties

#### A.    The Plaintiff's Contentions

The plaintiff asserts claims for breach of contract, wrongful foreclosure, civil conspiracy, Texas Deceptive Trade Practices Act ("DTPA") violations and intentional infliction of emotional distress ("IIED"). She claims that the defendants conspired to foreclose on the property and sell it without notice, in violation of the parties' purported oral agreements to modify her loan on September 4, 2009. She claims that Ocwen instructed her to not contact it for ninety days, and that it did not give her proper notice of the foreclosure and sale to U.S. Bank.

---

[4] As of May 1, 2010, the Fort Bend County Central Appraisal District valued the property at $99,770.00.

### B.     The Defendants' Contentions

The defendants aver that they initiated foreclosure proceedings because the plaintiff defaulted on her loan. They contend that all of the plaintiff's claims are barred by the statute of frauds, as well as by her own fraudulent statements on her loan application. They claim that the plaintiff can show no valid contract that the defendants breached in a way that damaged her. They assert that they followed appropriate notice procedures regarding the plaintiff's default and subsequent foreclosure, and that she cannot show any foreclosure defect resulting in a grossly inadequate sales price. They maintain that the plaintiff is not a consumer under the DTPA, and that regardless, they did not violate the DTPA. They allege that the plaintiff's civil conspiracy claim fails because she cannot show that the defendants acted illegally. They submit that the plaintiff's IIED claim is barred by the economic loss rule and is not recognized under Texas law. Finally, they contend that the plaintiff's failure to respond to the present motion indicates that she does not oppose the motion.

### IV.    Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but

only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The plaintiff in this case has not filed a response to the defendants' motion for summary judgment. According to this Court's local rules, responses to motions are due within twenty-one days unless the time is extended. S.D. Tex. L.R. 7.3. A failure to respond is "taken as a representation of no opposition." S.D. Tex L.R. 7.4. Notwithstanding the plaintiff's failure to file a response, summary judgment may not be awarded by default. *See Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279). To this end, the defendants, as "[t]he movant[s, have] the burden of establishing the absence of a genuine issue of material fact and, unless [they have] done so, the court may not grant the motion, regardless of whether any response was filed." *See Hetzel*, 50 F.3d at 362 n.3. Nevertheless, in determining whether summary judgment is appropriate, a district court may accept as undisputed the facts set forth in the motion. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (internal citations omitted).

## V. Analysis and Discussion

The Court grants the defendants' motion for summary judgment because no genuine issues of material fact remain in dispute. First of all, the plaintiff's allegation that the parties orally modified the loan does not survive the statute of frauds. In Texas, loans exceeding fifty thousand dollars that include agreements to delay repayment must be in writing. TEX. BUS. & COMM. CODE § 26.02(b). Further, any modification to an existing agreement must be in writing if the "modification encompasses or relates to a matter that must be in writing." *Deuley v. Chase Home Finance,* No. H-05-CV-4253, 2006 WL 1155230, *2 (S.D. Tex., Apr. 26, 2006) (citing *Garcia v. Karam*, 276 S.W.2d 255, 257 (Tex. 1955)). The plaintiff executed the note on October 21, 2005, for more than fifty thousand dollars. After defaulting on the note, she sought to modify the material terms of her loan, which would have constituted a separate agreement under Texas Business and Commerce Code § 26.02(b). Therefore, this alleged modification must have been reduced to writing, which it was not. Thus, the plaintiff's allegation of an oral agreement, even if true, is unenforceable as a matter of law.

Second, the plaintiff's own fraudulent certifications in her loan application prevent her from contesting the foreclosure.[5] During the plaintiff's deposition, she admitted that when she signed her loan application, she was not earning five thousand dollars per month and had not lived in the Stafford, Texas residence for eight years. She further admitted that she knew that potential lenders would rely on the information in her loan application when deciding whether to

---

[5] A defendant has the burden of establishing a defensive plea of fraud. *Texas Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879-80 (Tex. 1999). The elements of fraud are:
> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party suffered injury.

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)).

extend her a mortgage loan. Because the plaintiff made material misrepresentations on her loan application, her claims are barred by her fraud.[6]

Also, the Court grants the defendants' motion regarding the plaintiff's breach-of-contract claim because she fails to identify a contract that the defendants allegedly breached.[7] Presumably, she is alleging that the defendants breached an oral agreement regarding a loan modification, which, as the Court explained above, does not survive the statute of frauds. Additionally, regarding the plaintiff's wrongful foreclosure claim, the Court finds that the defendants followed appropriate foreclosure procedure. Pursuant to Section 51.002(d) of the Texas Property Code, the defendants provided appropriate notices before foreclosure, and gave the plaintiff sufficient time to cure her default. Pursuant to Section 51.002(b) of the Texas Property Code, the defendants gave the plaintiff timely notice of the time and place of the foreclosure sale, posted a copy of the notice of foreclosure at the courthouse, and filed a copy of that notice with the county clerk.

Regarding the foreclosure sale price, the plaintiff has not shown a defect in the sale that causally resulted in a grossly inadequate sales price. *See Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App. – Corpus Christi 2008, no pet.) (citing *Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App. – Houston [14th Dist.] 1989 writ denied)). Nor has the plaintiff demonstrated that any purported irregularity in the property description caused or contributed to lower bids, fewer bids or a grossly inadequate sales price. *See Terra XXI*, *Ltd. v. Harmon*, 279 S.W.3d 781, 788 (Tex. App. – Amarillo 2007, pet. denied) (internal citation

---

[6] Moreover, the deed specified that the plaintiff would be in default on her loan if she misrepresented any material facts on her loan application.

[7] To prevail on a breach-of-contract claim, a plaintiff must show: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *Valero Mtkg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App. – Houston [1st Dist.] 2001, no pet.) (internal citation and emphasis omitted).

omitted). As well, the plaintiff has not shown that the defendants failed to comply with statutory or contractual conditions governing foreclosure. *See Terra XXI, Ltd.*, 279 S.W.3d at 788. Accordingly, the plaintiff has produced no evidence in support of her wrongful foreclosure claim.

Next, the plaintiff's civil conspiracy claim also fails. To sustain a claim for civil conspiracy, a plaintiff must show: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Because the Court has already determined that the defendants did not act illegally, the plaintiff cannot establish the fourth or fifth elements of her civil conspiracy claim.

Finally, the plaintiff's IIED claim fails. Under Texas law, to recover damages for IIED, "a plaintiff must prove that 1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe." *See Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998) (internal quotation omitted). Because the plaintiff has not shown that the defendants acted recklessly or engaged in extreme or outrageous conduct, she cannot prevail on her IIED claim. Likewise, the Court grants the defendants' motion regarding the plaintiff's DTPA claim. Even if the plaintiff had standing to assert a valid DTPA claim, she has not shown that the defendants engaged in any deceptive practices that caused her damage. *See* TEX. BUS. & COMM. CODE §§ 17.44, 17.46.

## VI.     Conclusion

Based on the foregoing discussion, the Court GRANTS the defendants' motion in its entirety.

It is so **ORDERED**.

SIGNED at Houston, Texas this 20th day of July, 2011.

_____
Kenneth M. Hoyt
United States District Judge